**UNITED STATES of America, Appellee,**

v.

**Bruce H. SCHAFRICK,
Defendant–Appellant.**

**No. 668, Docket 88–1398.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 17, 1989.

Decided March 29, 1989.

Thomas G. Dennis, Federal Public Defender, D. Conn., Hartford, Conn., for defendant-appellant.

Joseph C. Hutchison, Asst. U.S. Atty., D. Conn. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., of counsel), New Haven, Conn., for appellee.

Before OAKES, Chief Judge, FEINBERG and PRATT, Circuit Judges.

FEINBERG, Circuit Judge:

Bruce H. Schafrick appeals from a judgment of conviction, dated September 15, 1988, after a jury trial before Alan H. Nevas, J., in the United States District Court for the District of Connecticut. Schafrick was found guilty of making a false statement in a bankruptcy matter, in violation of 18 U.S.C. § 152, and sentenced to three years incarceration, execution of which was suspended, and three years of probation.

### Background

In February 1986, appellant filed a voluntary petition for bankruptcy, at which time he disclosed that he had recently received $15,000 in settlement for a personal injury claim. At a meeting of creditors held in March 1986, the bankruptcy trustee questioned Schafrick about the settlement funds, and the following colloquy ensued:

Trustee: What did you do with the sixteen?

Schafrick: (unintelligible)

\* \* \* \* \* \*

Schafrick: No, I just signed it over.

Trustee: What?

Schafrick: I just signed it over. I have um ... I have papers to prove it though. I could get you papers (unintelligible).

Trustee: You signed over sixteen thousand to who?

Schafrick: My mom. I owed her for sixteen thousand for her bank notes (unintelligible) to a business (unintelligible).

\* \* \* \* \* \*

Trustee: What did you do, give her a check?

Schafrick: Yeah, I signed this right over to her, the check I got.

\* \* \* \* \* \*

Trustee: OK. Besides your house, you paid your mother the sixteen thousand uh ... or fourteen thousand when?

Schafrick: When I got it.

During the trial below, evidence was introduced showing that Schafrick owed his mother approximately $15,000. However, the settlement proceeds were not used to repay that loan. Edith Schafrick, appellant's mother, testified that the funds were deposited in an account in her name, but they never belonged to her. After opening the account, she signed blank withdrawal slips and gave them to her son so that he could withdraw the money whenever he wanted it. The money was deposited in Mrs. Schafrick's name to keep it from defendant's creditors. This information was discovered by the bankruptcy trustee when he instituted a suit against Mrs. Schafrick for return of the funds. The trustee summoned defendant for further questioning, and at a second bankruptcy hearing, held in November 1986, the trustee questioned Schafrick again about the settlement proceeds:

Trustee: What did you do with that check?

Schafrick: I deposited it in my mother's account, and I disposed of it in various ways.

Trustee: Explain that to me. What do you mean you deposited it into her account?

Schafrick: I knew my creditors were going to be after me. I figured if I put it in my name that they would grab it. So I put it in her account, and I had her sign maybe six or eight withdrawal slips.

\*     \*     \*     \*     \*     \*

Trustee: I am going to put you on notice that the questions you are answering could lead to an objection or revocation to your discharge. Do you want to call your attorney and have him here?

Schafrick: No, I think I can explain it very clearly—most of the money I blew.

Trustee: Let me make it clear you never explained this to the Trustee at the first meeting of creditors. Your statements today are in direct conflict to what you said at that first meeting. Are you aware of that?

Schafrick: Yeah.

Trustee: Why did you say certain things at the first meeting and say completely different things right now?

Schafrick: My ex-wife was standing in the first meeting right in front of me with her lawyer, and it was her divorce lawyer. I was trying to get to see my daughter which she would not let me see. We were going through court proceedings on that case.

\*     \*     \*     \*     \*     \*

Schafrick: I don't think I need my lawyer present. I know I committed perjury. I know what I did, but I did it for one reason, and it was because I wanted to see my daughter. And I didn't want her to use that which she could in a different court. The divorce court is not like this court. In turn I am not going to say I blew the money on sex, drugs and rock and roll in front of her because she would bring that up, and I never would see my daughter.

The indictment charged Schafrick with "falsely stat[ing] under oath that he turned over $15,675 received in a personal injury settlement to Edith Schafrick, his mother, in repayment of a personal loan, when in truth and in fact as the defendant well knew he had used said money for personal goods and services[.]" After trial, the jury found that Schafrick was guilty as charged. The jury rejected the argument that his testimony at the first creditors' meeting had been literally true. This appeal followed.

## Discussion

Appellant contends that all the statements he made at the first creditors' meeting were literally true, and therefore they were insufficient to establish that he had committed perjury. Although he admits that he intended to mislead, he argues that the trustee should have been alert to the unresponsiveness of his answers at the first meeting and should have asked more probing questions. He claims that, at most, the government proved at trial that

he falsely implied that he had given the money to his mother in repayment for a loan, and that perjury by implication is prohibited. Appellant makes much of the fact that he never used the word "payment" in his testimony at the first meeting.

Appellant relies on *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed. 2d 568 (1973), in arguing that his statement was literally true. In *Bronston*, the defendant was convicted of perjury for an answer that was literally true but unresponsive to the question and misleading. During a bankruptcy hearing, Bronston had been asked, "Do you have any bank accounts in Swiss banks, Mr. Bronston?" He replied, "No, sir." Then, he was asked, "Have you ever?" to which he answered, "The company had an account there for about six months, in Zurich." In fact, Bronston had had a personal account in Switzerland for nearly five years. Although Bronston did not say that he never had such an account, he implied that the only Swiss account he had belonged to the company. A panel of this court noted that the answer was literally true, but held that the jury could have found that Bronston's reply "was intended to represent that Bronston personally did not have such an account." *United States v. Bronston*, 453 F.2d 555, 558 (2d Cir.1971). In reversing this court, the Supreme Court held that it was not perjury for a witness to state something that implies something else that the witness does not believe to be true. 409 U.S. at 357–58, 93 S.Ct. at 599–600. It was irrelevant to the Court whether he intended to mislead his examiner with his unresponsive answer. *Id.* at 359, 93 S.Ct. at 600. Bronston's true but unresponsive answer should have alerted the questioner and led to further questioning. The Court stated that further questioning, not a perjury prosecution, is the appropriate remedy for unresponsive answers. *Id.* at 362, 93 S.Ct. at 601–602.

We do not believe that this case is the same as *Bronston*, although at first glance they appear to be similar. In *Bronston*, the crucial factor was that the answer

Bronston gave was not responsive to the question he was asked. Therefore, the answer put the examiner on notice that he had to ask further questions. If an answer is responsive to the question, then there is no notice to the examiner and no basis for applying *Bronston*. The purpose of the *Bronston* rule is to place the burden on the examiner to probe for details during the examination. The rule prevents an examiner from resolving ambiguities in the elicited testimony with a perjury prosecution after the fact.

In this case, as opposed to *Bronston*, Schafrick did not say anything that would have put the examiner on notice that the question was not being answered. He answered the question and offered additional information explaining his answer. Schafrick was so responsive that he anticipated the examiner's line of questioning. In response to the simple question, "You signed over sixteen thousand to who?" Schafrick answered by saying to whom he signed over the check and also *why* he signed over the check. Presumably, if Schafrick had answered by merely saying "My mom," then the next question would have been, "why did you sign it over to her?" Schafrick's answer to the first question satisfied both inquiries, making the second question superfluous.

Another distinction between this case and *Bronston* is that in *Bronston*, the answer was false only by implication from its unresponsiveness. In this case, "the proof of falsity is not premised on inferences attempted to be extracted from the fact of unresponsiveness." *United States v. Corr*, 543 F.2d 1042, 1049 (2d Cir.1976). Because the answer was responsive, its falsity derives from its clear meaning in context, and not by negative implication. We agree with the government that Schafrick's statements must be judged according to common sense standards and given their natural meaning in relation to their context. This circuit, since *Bronston*, has continued not only to examine the literal truth or falsity of defendant's words, but also to

**304**

examine the context in which these words were spoken. See *United States v. Ford,* 603 F.2d 1043, 1049 (2d Cir.1979).

■ If, in the context in which the statements were made, they were materially untrue, then perjury is established. This is so even if the statements could be literally true in isolation, as they could be in this case. In *United States v. Bonacorsa,* 528 F.2d 1218, 1221, cert. denied, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976), decided after *Bronston,* this court said:

> A defense to a charge of perjury may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole.

The questions as well as the answers, and the answers understood as a whole, are crucial to the determination of whether Schafrick's statements were perjury, and in context there is no doubt that Schafrick meant that he paid his mother for a debt, relinquishing all claims to the funds, when he said that he signed over the check. There was no indication in Schafrick's answer that the two responses, "My mom" and "I owed her ..." were independent, unrelated thoughts. Although separately they might have meant something else, as a unit they communicated that Schafrick paid the money to his mother in satisfaction of a debt.

The jury could have—and presumably did—consider Schafrick's words in context. The trustee's whole line of questioning concerned the disposition of the settlement proceeds, and it was in this setting that Schafrick stated what he did with the money. In response to the trustee's question, "What did you do with the sixteen?", Schafrick twice said, "I just signed it over." But he did not just sign it over; he signed it over with the understanding that he would retain complete control of the funds, which he actually did later use for "personal goods and services." If he had *just* signed the money over, then he would not have had use of the proceeds.

■ In addition, although Schafrick never said the word "pay" during the first hearing, he did not correct the examiner's use of the word "paid," and thereby endorsed the trustee's characterization of Schafrick's transaction with his mother. While we are aware that a perjury conviction "may not stand on a particular interpretation that a questioner places upon an answer[,]" *United States v. Lighte,* 782 F.2d 367, 374 (2d Cir.1986), the jury was not required to ignore the questions. In light of Schafrick's answer, there was no way that the trustee could have been put on notice that Schafrick was not, in fact, paying his mother for an antecedent debt.

■ Finally, it is important to remember that a jury found that Schafrick knowingly and fraudulently made a false oath. In a perjury conviction, unless the questioning is fundamentally ambiguous or imprecise, the truthfulness of appellant's answers is an issue for the jury. *United States v. Ford,* 603 F.2d 1043, 1049 (2d Cir.1979); *United States v. Bonacorsa,* 528 F.2d at 1221 (citing *United States v. Wolfson,* 437 F.2d 862, 878 (2d Cir.1970)). There was no claim in this case that the questions were ambiguous. We will not overturn a jury verdict where, as here, there was sufficient evidence for reasonable jurors to find that Schafrick's testimony was false beyond a reasonable doubt.

■ Schafrick's remaining arguments require less discussion. He claims that the trial court's instructions to the jury on falsity were erroneous because the judge included a reference regarding the interpretation of questions when there was no claim that any question was ambiguous. This reference was in the judge's instruction about the knowledge element of perjury. We do not believe that the instruction was error, because the judge was merely explaining that the jury could consider the context of the questions and answers in determining whether defendant knew that his answers were false. As we have said above, context is a proper consideration for

the jury. Appellant also argues that the judge erred in refusing to instruct that Schafrick had a right to dispose of his property as he wished. Because this was a prosecution for false statements, such a charge would not have been relevant to the issues in the case and it was not error to refuse to give it.

Appellant also claims that he was deprived of a fair trial because the prosecution, in its rebuttal argument, asserted that Schafrick owed $20,000 in arrears for child support payments, information which was not in evidence. Although the statement should not have been made, the trial court's instruction to the jury to disregard the remark was sufficient to overcome any prejudice, particularly since there was evidence in the record that defendant was attempting to hide money from his ex-wife. Finally, appellant argues that the court erred in refusing to exclude Schafrick's remark at the second hearing that he had spent the money "on sex, drugs and rock and roll." He claims that his testimony at that hearing that "I blew it" would have been sufficient. A district court has broad discretion in weighing probativeness against prejudice, *United States v. Khan*, 787 F.2d 28, 34–35 (2d Cir.1986) (citing *United States v. Moon*, 718 F.2d 1210, 1233 (2d Cir.1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984)), and we do not believe that the judge abused his discretion here.

We have considered all of appellant's arguments and they are without merit. The judgment of the district court is affirmed.