**UNITED STATES of America,**
**Appellee–cross–Appellant,**

v.

**William W. HAMILTON, Jr.,**
**Defendant–Appellant–**
**cross–Appellee.**

Nos. 00–1228, 00–1318.

United States Court of Appeals,
Second Circuit.

Jan. 22, 2001.

Barry A. Bohrer, Morvillo, Abramowitz, Grand, Iason & Silberberg, New York, NY, for appellant.

Sharon L. McCarthy, Assistant United States Attorney, New York, NY; Mary Jo White, United States Attorney for the Southern District of New York, Christine H. Chung, Robert E. Rice, Martine M. Beamon, of counsel, for appellee.

Present SACK, SOTOMAYOR and KATZMANN, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be, and it hereby is, AFFIRMED.

Hamilton appeals from a judgment of conviction entered on April 11, 2000, following a five week jury trial in the United

States District Court for the Southern District of New York (Thomas P. Griesa, *Judge* ). Hamilton, who was at all relevant times the Director of Governmental Affairs for the International Brotherhood of Teamsters (IBT), was convicted on all counts of a six count indictment charging conspiracy, embezzlement of union funds, mail fraud, wire fraud, making false statements to a court appointed election officer, and perjury.

The rules governing the 1996 IBT election prohibited the direct or indirect use of IBT funds to promote the candidacy of anyone running for union office and prohibited contributions by employers or management to candidates for union office. Federal labor law also prohibits the use of union funds or employer contributions to promote the candidacy of anyone running for union office. *See* 29 U.S.C. § 481(g). Hamilton was accused of circumventing those provisions by participating in a "swap scheme" under which wealthy persons who wished to channel money to political causes would donate the money to the 1996 reelection campaign of incumbent IBT President Ron Carey instead, in exchange for which IBT funds would be given to the donor's chosen political causes. The effect of the alleged scheme was to finance the Carey reelection campaign with union money. Hamilton was charged with, *inter alia*, aiding and abetting a violation of 29 U.S.C. § 501(c), which makes it a crime for "[a]ny person [to] embezzle[ ], steal[ ], or unlawfully and willfully abstract[ ] or convert[ ] to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly," and for mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343, respectively. Hamilton was also charged with making false statements under 18 U.S.C. § 1001 and perjury under 18 U.S.C.

§ 1623 in connection with the investigation of the scheme.

Hamilton asserts several grounds for reversal.

 He first challenges the district court's jury instruction on the embezzlement, mail fraud, and wire fraud charges. The propriety of jury instructions is a question of law that we review de novo. *See United States v. Naiman,* 211 F.3d 40, 50 (2d Cir.2000). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Walsh,* 194 F.3d 37, 52 (2d Cir.1999) (citation and quotation marks omitted). However, "[r]eversal is required only if the instructions, viewed as a whole, caused the defendant prejudice." *Naiman,* 211 F.3d at 51. "Where the defendant requests a charge as to his defense of good faith, there is no basis for reversal where the court's instructions have properly explained the thrust of that defense." *United States v. Paccione,* 949 F.2d 1183, 1200–01 (2d Cir.1991).

 Central to a conviction for embezzlement under § 501(c) is proof of fraudulent intent. Our case law establishes that "a union official charged with embezzling union funds, pursuant to 29 U.S.C. § 501(c), lacks the requisite criminal intent when the evidence establishes that he had a good-faith belief *both* that the funds were expended for the union's benefit *and* that the expenditures were authorized (or would be ratified) by the union." *United States v. Butler,* 954 F.2d 114, 118 (2d Cir.1992)(emphasis added). "Authorization from and benefit to the union are the controlling lodestars to determine whether a defendant acted with the fraudulent intent to deprive the union of its money." *Id.* Proof of a good faith belief that expenditure of the funds benefitted

the union, without proof of a good faith belief that the expenditure was or would be authorized—and vice versa—is insufficient to make out the "good faith" defense. Likewise, authorization without a good faith belief that the use of the funds benefitted the union is insufficient.

Hamilton requested that the jury be charged on a good faith defense of authorization and benefit. The district court refused to include the standard authorization and benefit language, *see United States v. Nolan,* 136 F.3d 265, 270 (2d Cir.1998), believing that the standard charge would lead the jury to infer, erroneously, that their findings on the issues of whether Hamilton and the union officials who authorized the contributions were aware of the quid pro quo scheme was irrelevant to their finding on the embezzlement charge.

Addressing the court's concern, the government proffered a version of the standard benefit and authorization charge tailored to the facts of this case. The district court declined to use it. Instead, the court charged that if Hamilton was aware of the quid pro quo scheme and intended that it be carried out, the jury should find him guilty on the embezzlement charge.

While we think that it may well have been better for the district court to have used the government's version of the benefit and authorization charge, we conclude that the charge that the district court in fact employed was correct under the circumstances of this case. The swap scheme alleged in the indictment was an illegal means of attaining an illegal end: use of union funds for the Carey election campaign. That was true even if the swapped union fund contributions that made up part of the scheme were consistent with IBT goals, and even if the contributions were authorized by the union, at least if the authorization was made without knowledge that the contributions were part of a swap

for money paid for the Carey campaign. "An authorization obtained without disclosure of ... material information is obviously a nullity." *Butler,* 954 F.2d at 119. So long as Hamilton knowingly participated in the illegal scheme of swapping contributions to Carey for contributions to political organizations, rather than a plan to have IBT give the money in the hope that it would attract contributions to the Carey campaign, as the instructions pointed out, Hamilton had no good-faith defense.

■ The district court also properly charged the jury on the good faith defense to mail fraud and wire fraud. Our focus in reviewing mail and wire fraud jury instructions has been to ensure that the jury is instructed that a specific finding of intent to harm is necessary for conviction. *See United States v. Koh,* 199 F.3d 632, 641 (2d Cir.1999). The court properly instructed the jury that it must find that Hamilton made misrepresentations with the specific aim of harming the IBT by depriving it of money in order to convict him of mail and wire fraud. The court further charged that "a good faith belief in the honesty of the representations is a complete defense.... The government has the burden of proof to show the intent to deceive instead—and that that occurred rather than a good faith belief, an honest belief in the truth of the representations." We have held that a court properly charged the jury on the good faith defense to mail and wire fraud when it instructed that "[a]n honest belief in the truth of the representations made by a defendant is a good defense, however inaccurate the statement may turn out to be. No further elaboration was necessary." *United States v. Alkins,* 925 F.2d 541, 550 (2d Cir.1991) (internal quotation marks omitted). The district court did not commit error by its charge on these counts.

Hamilton next argues that the district court erred in permitting Carey's campaign manager to testify about a scheme to defraud the IBT with which Hamilton had no connection. We review evidentiary rulings for abuse of discretion. *See Naiman,* 211 F.3d at 51; *United States v. Diaz,* 176 F.3d 52, 79 (2d Cir.) (cert. denied sub nom *Rivera v. United States,* 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999)).

■ At the beginning of his testimony, Jere Nash, Carey's campaign manager, described an earlier scheme in which he and others planned to obtain contributions totaling $150,000 from three union leaders by disguising the contributions as coming from individual union members who were not limited by the rules. Nash pleaded guilty to his involvement in this scheme as part of his cooperation agreement with the government. Hamilton's counsel objected to the testimony after it had concluded.

The district judge did not abuse his discretion in permitting this testimony. We have held that "[t]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events involved in the case." *United States v. Skowronski,* 968 F.2d 242, 246 (2d Cir.1992). Additionally, since Nash was a participant in the previous scheme and was a testifying witness, "it was appropriate for the prosecution to elicit testimony during direct examination that exposed details damaging to . . . [his] credibility." *United States v. Coonan,* 938 F.2d 1553, 1561 (2d Cir.1991). The prosecution is allowed to elicit such testimony in order "to avoid the appearance that it was concealing impeachment evidence from the jury." *Id.* It was not the type of testimony that would prejudice the defendant. Indeed, if anything, the testimony seems to support Hamilton's theory that he was never part

of a conspiracy or plan. Even if there was any error, it was harmless.

■ Finally, Hamilton challenges the sufficiency of the evidence for his perjury conviction (Count Six) on the grounds that two of the twenty-eight specifications were literally true and colored the entire conviction because the jury returned a general verdict of guilty. The evidence was sufficient to support Hamilton's conviction.

A defendant seeking to overturn a conviction based on the insufficiency of evidence "bears a heavy burden." *United States v. Desimone,* 119 F.3d 217, 223 (2d Cir.1997) (citations omitted). We consider the evidence in the light most favorable to the government, drawing all inferences in its favor. *See United States v. Aulicino,* 44 F.3d 1102, 1114 (2d Cir.1995). We will sustain a jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis omitted).

■ Perjury requires a jury to determine whether the witness believes that a statement he made is true or false. "Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of [declarant's] answer [is] for the jury." *United States v. Lighte,* 782 F.2d 367, 372 (2d Cir.1986) (internal quotation marks and citations omitted) (alterations in original). Whether an answer is literally true is also a factual question for the jury. *See id.* at 373; *see also United States v. Schafrick,* 871 F.2d 300, 304 (2d Cir.1989).

The "literally true" defense, or the "Bronston Defense," does not provide the defendant relief in this case. *See Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). "The purpose of the Bronston rule is to place

the burden on the examiner to probe for details during the examination. The rule prevents an examiner from resolving ambiguities in the elicited testimony with a perjury prosecution after the fact." *Schafrick*, 871 F.2d at 303. This Circuit, however, examines not only "the literal truth or falsity of defendant's words, but also . . . the context in which these words were spoken." *Id.* at 303–04. "If, in the context in which the statements were made, they were materially untrue, then perjury is established. This is so even if the statements could be literally true in isolation." *Id.* at 304. The statements that Hamilton claims are literally true are only literally true in isolation. A reasonable jury could have found beyond a reasonable doubt that these statements were materially untrue in the context of the questions asked of Hamilton. The perjury conviction must therefore stand.

The judgment of the district court is therefore hereby AFFIRMED.