16-3985 (L)
*United States v. Kaplan*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**CORRECTED SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 6th day of December, two thousand eighteen.

Present:    ROBERT A. KATZMANN,
                        *Chief Judge*,
                GUIDO CALABRESI,
                RAYMOND J. LOHIER, JR.,
                        *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                        *Appellee-Cross-Appellant*,

                v.                                                    Nos.    16-3985(L)
                                                                                17-107(CON)
                                                                                17-108(CON)
                                                                                17-377(CON)
                                                                                17-927(CON)

LAWRENCE A. KAPLAN, PAUL E. RAIA, SCOTT M. DOUMAS, RICHARD R. GOLDBERG, RICHARD LINICK,

                        *Defendants-Appellants*,

MARK BENOWITZ, HOWARD S. STRAUSS, WALLACE W. DIRENZO, AKA Wally, JAMES P. ELLIS, AKA Max Braddock, AKA Patrick Cosgrove, AKA Todd Parker, EDWARD MORRIS WEAVER, AKA Ned,

                        *Defendants*.

_____

For Appellee United States:  PATRICK JASPERSE, Senior Litigation Counsel, U.S. Department of Justice, Consumer Protection Branch, Washington, DC, *for* Chad A. Readler, Acting Assistant Attorney General, Washington, DC, and Richard Donoghue, U.S. Attorney, Eastern District of New York, Brooklyn, NY.

For Defendant-Appellant Lawrence A. Kaplan:  VINCENT J. MARTINELLI, Staten Island, NY.

For Defendant-Appellant Paul E. Raia:  GLENN A. OBEDIN, Central Islip, NY.

For Defendant-Appellant Scott M. Doumas:  PETER J. TOMAO, Garden City, NY.

For Defendant-Appellant Richard R. Goldberg:  ALLEGRA GLASHAUSSER, Federal Defenders of New York, Inc., New York, NY.

For Defendant-Appellant Richard Linick:  RANDALL D. UNGER (argued), SALLY J. BUTLER, Bayside, NY.

Appeal from judgments of the United States District Court for the Eastern District of New York (Azrack, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgments of the district court are **AFFIRMED**.

The defendants-appellants in this case were part of a sweet scheme that came to a sticky end. Lawrence A. Kaplan, Paul E. Raia, Scott M. Doumas, Richard R. Goldberg, and Richard Linick were all salespeople or managers at Vendstar, "a company that sold valueless [candy] vending-machine business opportunities to its victims." *United States v. Weaver*, 860 F.3d 90, 92 (2d Cir. 2017) ("*Weaver I*"). They now appeal from judgments of conviction entered by the United States District Court for the Eastern District of New York (Azrack, *J.*), after a jury found them guilty of various fraud, conspiracy, and false statement charges. The defendants make five sets of claims: (1) the evidence was insufficient to support their convictions; (2) their sentences

2

were procedurally and/or substantively unreasonable; (3) the contractual disclaimers their customers signed preclude their conspiracy and fraud convictions; (4) certain statements that prosecutors made during rebuttal summation entitle them to a new trial; and (5) Linick's trial counsel was ineffective. We assume familiarity with the underlying facts, the procedural history, and the issues presented for review.

    1.  <u>Sufficiency of the evidence</u>

All five defendants were convicted of conspiracy to commit mail and wire fraud. Kaplan was also convicted of one count of mail fraud, five counts of wire fraud, and one count of making a false statement to government officials; Doumas of one count of mail fraud; Goldberg and Linick of one count of wire fraud each; and Raia of two counts of wire fraud. We will affirm a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Barret*, 848 F.3d 524, 534 (2d Cir. 2017).[1] We must defer to the jury's weighing of the evidence, its determinations of witnesses' credibility, and its choices among competing inferences that could be drawn from the evidence. *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998).

The elements of mail and wire fraud are "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Weaver I*, 860 F.3d at 94. To show a scheme to defraud, the government must prove that the defendant made material misrepresentations—statements that had "a natural tendency to influence, or [were] capable of influencing, the decision of the [person] to which [they were] addressed." *Id.* It must also prove fraudulent intent, which means not "that the victims of the fraud were *actually*

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

injured, but only that defendants *contemplated* some actual harm or injury to their victims." *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016). To prove conspiracy, there must be "some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Hassan*, 578 F.3d 108, 123 (2d Cir. 2008).

The evidence was sufficient to convict all five defendants of conspiracy and fraud. Doumas, Goldberg, Linick, and Raia repeatedly lied to customers about the quality of the machines and candy they were selling and about the quality of the locating companies to which they referred their customers, factors essential to making the customers believe they were making a good investment. *See United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970) ("Where the false representations are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain."). Kaplan then lied to complaining customers by claiming that the salespeople had not made these misrepresentations. Indeed, the very nature of Vendstar's business—which was designed to part victims from their money through false promises of easy returns—provides a sufficient evidentiary basis for the defendants' convictions. *See United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) ("When the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself.").

Kaplan, Goldberg, and Linick contend that the government could not prove their fraudulent intent. The trial record contains plenty of evidence, however, that each had the requisite mens rea. For example, Kaplan told salespeople to encourage customers to use their locating companies instead of letting customers choose their own locations. He then encouraged

4

the locating companies to falsely tell customers that there were good locations available, and informed them when there were so many complaints that the companies had to change their names to continue operating. Emails introduced into evidence showed Goldberg warning one locator of a bad review on the Better Business Bureau website, telling her to "make a change" because the review "could be a problem for us"; Goldberg then forwarded the locator's changed personal and business names to other Vendstar salespeople. U.S. Suppl. App. 90-96. One cooperator also testified that Goldberg said to him: "[W]e were not salesmen; we were professional thieves, stealing people's money." U.S. Suppl. App. 410. Linick, meanwhile, promised that Vendstar's machines would empty a certain number of times per year, that the customers would make certain amounts of money per year, and that other customers were successful. He acknowledged to other salespeople, however, that he knew the machines did not make money. Linick even told customers that he had his own profitable Vendstar route, but he did not. This and much else in the record provides sufficient evidence of fraudulent intent.

Doumas and Raia, for their part, claim that any misrepresentations were not material because they were merely sales puffery. Puffery consists of "[s]ubjective claims about products, which cannot be proven either true or false," or "an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007). Doumas's and Raia's misrepresentations do not meet this description. Both Doumas and Raia told customers that the locating companies would place machines at locations where they would make specific amounts of money per day, but knew the companies would do no such thing. Doumas and Raia also told customers that they themselves had profitable vending routes, but they did not. These are specific, falsifiable statements that a reasonable jury could certainly deem material.

Doumas also asserts that the evidence did not show that he engaged in a scheme to defraud customer Jeremy Arnett. The testimony at trial showed that Doumas dissuaded Arnett from consulting his financial advisor before making a purchase and promised Arnett he would recover his investment in a matter of months once he sold the $10,000 in candy that Doumas included to sweeten the deal. Arnett therefore believed there would be no risk to making the investment and so purchased the machines. To help convince Arnett, Doumas and another salesman mailed Arnett a copy of Vendstar's sales brochure, which contained numerous misrepresentations. A rational jury could therefore find that Doumas intended to sell Arnett a worthless business opportunity and used the mails to further the scheme by sending Arnett Vendstar's brochure.

Goldberg suggests that he did not intend to defraud customer James Jackson because he used acceptable sales tactics on his phone call with Jackson. Goldberg told Jackson that he would get his investment back if he emptied his machines once. Goldberg emphasizes the conditional nature of this statement, claiming it was mere puffery rather than a fraudulent misrepresentation. However, the evidence at trial showed that the candy would go stale before the machines emptied, so customers had to replace their stock multiple times (thereby significantly upping their investment) to sell just one machine's worth. Goldberg also falsely told Jackson that the machines were made of "high-grade plastic" that was "the same plastic [as] on the Space Shuttle." Goldberg App. 68. Given these misrepresentations, Jackson's testimony that Goldberg told him he "wouldn't ever be Bill Gates" and "wouldn't make a fortune" from the machines, Goldberg App. 67, does not undermine the jury's finding that he committed wire fraud.

Finally, Kaplan contests his conviction for making false statements to the FBI, claiming that he did not lie to investigators when he said that he (1) did not know whether locating

6

company owner Jim Ellis was still in the vending business, (2) did not know whether Ellis used any aliases, and (3) had not had contact with Ellis for three years. Kaplan relies on the standards for perjury convictions, which require that a statement be "untrue when made and known to be untrue by the individual making it" and thereby shield from criminal liability some statements responding to "fundamentally ambiguous" questions. *United States v. Lighte*, 782 F.2d 367, 373, 375 (2d Cir. 1986). This court has never held that these standards apply to false statement charges under 18 U.S.C. § 1001, simply assuming so without deciding. *See*, *e.g.*, *United States v. Sampson*, 898 F.3d 287, 307 n.15 (2d Cir. 2018). We do the same here, and we find the evidence sufficient to convict Kaplan.

Kaplan claims that he responded to the investigator's questions "focused on who he knew the real 'Ellis' to be," since he was uncertain if Ellis was the same person as those with whom he later did business, Patrick Cosgrove and Todd Parker. Kaplan Br. at 36. But given the strong evidence that Kaplan knew Ellis had changed his name and done business with Vendstar as Cosgrove and then Parker, and applying "common sense standards," *Sampson*, 898 F.3d at 306 (citation omitted), a reasonable jury could easily conclude that the investigator's invocation of Ellis "was not fundamentally ambiguous—and thus that [Kaplan], understanding the question[s], lied," *id.* at 307. "[U]nless the questioning is fundamentally ambiguous or imprecise, the truthfulness of appellant's answers is an issue for the jury." *United States v. Schafrick*, 871 F.2d 300, 304 (2d Cir. 1989).

2. Sentencing

Next, the defendants argue that the district court made procedural and substantive errors in calculating their sentences. They assert, primarily, that the district court miscalculated both actual and intended loss. According to the defendants, the court based its actual loss amounts on testimony and customer statements without establishing that the losses all resulted from the defendants' fraud; and it used Vendstar's total sales, discounted by 40% for the value of the machines and candy, to calculate intended loss even though the government did not prove that every sale was fraudulent.

Even assuming that the district court erred, any loss calculation error was harmless because "the record indicates clearly that the district court would have imposed the same sentence in any event." *United States v. Kent*, 821 F.3d 362, 367 (2d Cir. 2016). At each defendant's sentencing, the district court noted that the parties' disputes over the Guidelines loss amounts were "beside the point" because its sentence was based on "the defendant and his conduct and not the intricacies of calculating loss under the guidelines." Goldberg App. 167; *accord* Kaplan App. 752; Linick App. 334; U.S. Suppl. App. 627, 638. "[T]he district court's emphatic statement[s] that it would have imposed the same sentence regardless of the loss amount . . . renders any error in the loss calculation harmless." *United States v. Binday*, 804 F.3d 558, 598 (2d Cir. 2015); *see United States v. Weaver*, 698 F. App'x 629, 633-34 (2d Cir. 2017) ("*Weaver II*") (summary order).

Three of the defendants also argue that their sentences were substantively unreasonable. This court defers to "the district court's [judgment] on the question of what is sufficient to meet the § 3553(a) considerations in any particular case," and will "set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be

8

located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). The district court's sentencing decisions here were clearly within the permissible range.

Doumas claims that he should not have received an aggravating role adjustment because he only "acted as a supervisor on a sporadic basis." Doumas Br. at 59. But to receive this adjustment, a defendant need only have "exercised *some* degree of control over others involved in the commission of the offense." *United States v. Garcia*, 413 F.3d 201, 223 (2d Cir. 2005) (emphasis added). Even occasional work as a manager can meet this standard. Goldberg and Linick claim, meanwhile, that the district court did not properly consider their individual characteristics under § 3553(a). However, the court discussed Goldberg and Linick's individual characteristics and explained why it decided that a significant but below-Guidelines sentence was warranted.

### 3. Contractual disclaimers

The defendants next claim that their verbal misrepresentations to customers were immaterial as a matter of law, and therefore cannot form the basis for fraud convictions, because the customers signed contracts that disclaimed any reliance on non-written representations. We have already rejected that argument. *See Weaver I*, 860 F.3d at 95.

### 4. The government's rebuttal summation

The defendants argue that the government, during its rebuttal summation, improperly argued that they were guilty by pointing to the eight cooperating witnesses' guilty pleas. "While it is impermissible for a prosecutor to suggest to a jury that the conviction of a testifying co-conspirator is evidence that a defendant on trial is guilty," this rule does not preclude disclosure of cooperators' convictions for proper purposes. *United States v. Louis*, 814 F.2d 852, 856 (2d

9

Cir. 1987). Such purposes include "invit[ing] the jury to consider the implausibility of [a defendant's] claim that the witnesses were all committing perjury." *United States v. Rodriguez*, 587 F.3d 573, 583 (2d Cir. 2009).

That is exactly what the government did here. Attorneys for several of the defendants—as well as for their co-defendant, Vendstar CEO Ned Weaver—implied or directly argued in their summations that the government's cooperating witnesses were lying in exchange for lighter sentences and lower restitution amounts. The prosecution responded appropriately. The defendants have not shown that the government's comments, "when 'viewed against the entire argument to the jury,' and 'in the context of the entire trial,' w[ere] so severe and significant as to have 'substantially prejudiced' [them], depriving [them] of a fair trial." *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011).

5. Linick's ineffective assistance claim

Linick claims that his attorney did not adequately confer with him prior to trial, which in turn caused counsel to miss fruitful lines of investigation, compromise Linick's right to testify on his own behalf, and perform poorly at trial. "A claim of ineffective assistance entails a showing that: 1) the defense counsel's performance was objectively unreasonable; and 2) the deficient performance prejudiced the defense." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014). The district court rejected Linick's claim of ineffective assistance of counsel after holding a hearing on the issue. We review the district court's factual findings for clear error but review *de novo* the court's determination of whether the facts show unreasonableness and prejudice. *See Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

Linick fails to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" deemed acceptable under our "highly deferential"

10

standard of review. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Linick first contends that his counsel's lack of time conferring with Linick prevented him from making an informed decision about whether to find satisfied customers to testify. Linick's counsel, however, testified that he and Linick discussed whether to find such customers, that he "didn't think [doing so] was going to be very helpful," and that he thought they should focus instead on cross-examining the unsatisfied customers and other witnesses the government would call—a strategy to which, counsel testified, Linick was "agreeable." Linick App. 209. Linick's counsel therefore reasonably decided that this particular investigation was unnecessary. *See Strickland*, 466 U.S. at 691. Linick also asserts that his counsel only advised him not to take the stand during the trial, after the district court asked the defendants if they wished to testify and the others said no. But Linick's attorney testified that he had previously consulted with Linick about his right to testify and suggested that he not exercise it—testimony the district court credited over Linick's. This advice was not ineffective assistance.

Last, Linick states that his counsel's failure to consult with him led his counsel to discuss Linick's sales script during opening statements, which prejudiced him when his counsel was unable to introduce it into evidence during trial. Linick insisted to his counsel that the cooperating salespeople all knew he used a script, and there is no evidence that his counsel was unreasonable for relying on that representation. But no witness recalled such a script on the stand. A strategy's failure to unfold as expected over the course of a trial does not mean the strategy was objectively unreasonable. *See Bierenbaum v. Graham*, 607 F.3d 36, 52 (2d Cir. 2010).

11

We have considered all the defendants' arguments on appeal and find in them no basis for reversal. For the foregoing reasons, we hereby **AFFIRM** the judgments of the district court.

FOR THE COURT:

CATHERINE O'HAGAN WOLFE, CLERK