**UNITED STATES of America,**
**Appellee,**

v.

**Elimelech NAIMAN, Defendant–**
**Appellant.**

**Docket No. 99–1336.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 16, 2000.

Decided April 27, 2000.

**42**

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, L.L.P., (Grant R. Vinik, Stephanie A. Martz, on the brief), Washington, D.C., for Defendant–Appellant.

Jason Brown, Assistant United States Attorney, (Loretta E. Lynch, United States Attorney for the Eastern District of New York, Jo Ann Navickas, Assistant United States Attorney, on the brief), Brooklyn, N.Y., for Appellee.

Before: KEARSE, WALKER and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Elimelech Naiman appeals from the judgment of the United States District Court for the Eastern District of New York (Charles P. Sifton, then-*Chief Judge* ) convicting him after a seven-week jury trial of one count of misapplication of funds in violation of 18 U.S.C. § 666(a)(1)(A), one count of bribery in violation of 18 U.S.C. § 666(a)(2) and five counts of mail fraud in violation of 18 U.S.C. § 1341.[1] Naiman asks that we re-

1. Third superseding indictment S3 Cr. No. 97–0048, filed in the Eastern District of New York on April 2, 1998, charged Elimelech Naiman, Dov Hikind and Paul Chernick in Count One with conspiring to misappropriate the funds of the Council of Jewish Organizations of Borough Park, Inc. ("COJO") in violation of 18 U.S.C. §§ 371, 3551 et seq. Count Two charged Naiman, Hikind and Chernick with misappropriating property having a value of at least $5,000 from COJO, an organization that received more than $10,000 in federal funds annually, in violation of 18 U.S.C. § 666(a)(1)(A). Count Three charged Naiman and Chernick with corruptly paying funds to Hikind, an agent of the State of New York, with the intent to reward or influence

Hikind in connection with state business involving at least $5,000, in violation of 18 U.S.C. § 666(a)(2). The indictment alleged that the State of New York received more than $10,000 in federal funds for jurisdictional purposes.

Count Four charged Hikind with corrupt solicitation and acceptance of funds, in violation of 18 U.S.C. § 666(a)(1)(B). Count Five charged Hikind with conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 371 and 3551 et seq. Counts Six through Ten charged Hikind with mail fraud in violation of 18 U.S.C. §§ 1341, 1346, 2 and 3551.

Counts Eleven through Twenty-two charged Naiman and Chernick with mail fraud in con-

verse his convictions on Counts 2, 3, 12, 13, 14, 15 and 18 because the evidence was insufficient to sustain the convictions. Appellant also argues that he suffered prejudicial spillover from evidence that the government presented to support dismissed counts and counts on which he was acquitted. Finally, Naiman contends that the district court improperly instructed the jury regarding misapplication of funds under 18 U.S.C. § 666(a)(1) and wrongly admitted evidence of prosecution witnesses' immunity agreements during redirect examination.

This appeal presents a number of cautionary tales, one of which is the extent to which an individual may take the law and public dollars into his own hands as he protests his good and charitable intentions. The more difficult cautionary tale features the prosecutor as its protagonist and teaches again the rigorous standard to which we hold the government when an individual's liberty is at stake. In the heat of a complicated trial involving two defendants, the government let pass a limiting instruction that the district court gave at a defendant's request. In that moment, the government failed to prove an element of the crime, which was no less crucial to the defendant's subsequent conviction because it concerned jurisdiction and not a substantive feature of the crime. For the reasons that follow, we reverse Naiman's conviction for corrupt payment of funds in violation of 18 U.S.C. § 666(a)(2) on grounds of insufficient proof of the statute's jurisdictional element, but we affirm the remaining convictions.

## BACKGROUND

This appeal arises from the seven-week trial of a rabbi and an assemblyman on charges of bribery, misapplication of money and fraud in connection with programs that receive federal funds. Defendant-appellant Elimelech Naiman is a rabbi who for some time managed the Council of Jewish Organizations of Borough Park, Inc. ("COJO"), a nonprofit community organization established in 1972 to promote economic development and provide comprehensive social services to the indigent, elderly, and immigrant members of the Jewish community in Borough Park, Brooklyn. Naiman served as COJO's Director of Employment and Training from 1987 through 1996. In 1989 co-defendant Paul Chernick, who pleaded guilty before trial, became COJO's Director of Operations. Naiman and Chernick controlled the nonprofit organizations known as Private Sector Resource Center, Inc. (PSRC) and Community Service Resource Development, Inc. (CSRD) that COJO incorporated during the 1980s. There was considerable overlap in the management of COJO, PSRC, and CSRD. Naiman and Chernick were responsible for the day-to-day management of the COJO entities and had authority to disburse PSRC and CSRD funds.

Co-defendant Dov Hikind, whom the jury acquitted on all charges in this case,

---

nection with false certifications they made relating to New York State Senate and Assembly contracts, in violation of 18 U.S.C. §§ 1341, 2 and 3551. Counts Twenty-three through Twenty-seven charged Chernick and Naiman with wire fraud in violation of 18 U.S.C. §§ 1343, 2, and 3551. Counts Twenty-eight through Thirty-four, which charged Naiman and Chernick with various tax fraud offenses, are not relevant here because Judge Sifton dismissed them before submitting the case to the jury.

Chernick pleaded guilty before trial on nine counts of the indictment. The district court sentenced him principally to concurrent terms of 33 months imprisonment on each count and a $30,000 fine. Hikind stood trial with Naiman. The district court dismissed several additional counts of the indictment before submitting the case to the jury. The indictment was then redacted and renumbered. The charge, the verdict sheet, and post-trial submissions refer to the renumbered counts. However, the judgment retains the original numbers. Equating only the counts of conviction, Renumbered ("R") Count 12 is Original ("O") Count 15; R13 is O16; R14 is O17; R15 is O18; and R18 is O21. The jury acquitted Hikind on all counts.

was elected to the New York State Assembly from Borough Park in 1982 and was an ardent supporter of COJO, which served large numbers of his constituents. Hikind and other members of the New York State legislature assisted the COJO entities in securing public funds for projects in the Borough Park community. In 1993, Hikind allocated $99,000 in discretionary New York State Assembly grants known as member-item initiative funds to CSRD to develop a computer database of local businesses through COJO's Business Outreach Center. To receive the money awarded through the Assembly, CSRD entered into a contract with the New York Department of State (the "Assembly contract") requiring it to submit written certification as to how it spent the money. In 1994, with the help of Senator Ralph Marino, who was then majority leader, CSRD received $200,000 in Senate member-item funds to be used for a business outreach program. To secure the Senate funds, CSRD again entered into a contract with the New York Department of State (the "Senate contract").

Viewed in the light most favorable to the government, the evidence at trial established that Naiman engaged in a scheme to defraud New York State in connection with member-item contracts and that the scheme involved mailings between Albany and Brooklyn. Under the terms of the Assembly contract between CSRD and the Department of State, Naiman was required to specify how he spent the funding under the $99,000 Assembly award, and certify the truth of the information he provided by signing the documents. In budget papers he submitted to the Department of State, Naiman certified that approximately $50,000 was designated for salaries of the "Business Coordinator" and "Business Specialist" plus $9,000 for each employee's fringe benefits. However, because Naiman did not list the identity of the Business Coordinator and Business Specialist, the state asked for additional information. In a memorandum to the Department of State dated January 3, 1996, Naiman identified Saul Wassertheil as the Business Coordinator and Chaim Brecher as the Business Specialist and requested reimbursement for their salaries in the amount of $51,632.55. In addition, Naiman submitted detailed documents that listed project expenses and certified that he used the funds solely for approved purposes.

In response to Naiman's submissions, New York State remitted $51,632.55 by mail to reimburse CSRD for the salaries of Brecher and Wassertheil. Although neither man performed work under the Assembly contract, Naiman issued approximately $50,000 in CSRD checks to Brecher and Wassertheil. Wassertheil accepted the checks even though he never did work under the contract. Brecher never received the CSRD paychecks that Naiman wrote to him, yet many of these checks were cashed at Reliable Check–Cashing Inc. ("Reliable") in Brooklyn and had Naiman's initials on the back. The owner of Reliable, Samuel Rottenstein, testified that he routinely cashed third-party checks drawn on CSRD's account, including many that were payable to Chaim Brecher. Reliable cashed checks that Naiman or COJO messenger Jehuda Glucksman brought in. If Naiman was not planning to cash the checks personally, he would call Reliable to let Rottenstein or his employees know that Glucksman was on his way to cash COJO checks on Naiman's behalf. Naiman's calls to Reliable provided assurances that he was responsible for the check. To signify that they received permission to cash a COJO check, Reliable employees typically wrote Elimelech Naiman's Hebrew initials on the reverse side of a check. Glucksman, in turn, remitted the cash to Naiman.

In connection with the $200,000 Senate contract, Naiman falsely certified to New York State that CSRD paid approximately $50,000 in consulting fees for business outreach activities to several employees of Hikind or their family members and re-

quested reimbursement for those services. Relying on Naiman's verification of the information, the state remitted the full amount requested by mailing two checks in February and May of 1995 to CSRD in Brooklyn. However, the "consultants" named in documents submitted to the state never worked on the CSRD computer database projects. Rather, several of Hikind's staff members testified that they or members of their family received checks from COJO or CSRD for voter registration work they performed through Hikind's office. After authorities began to investigate COJO, Naiman presented the CSRD "consultants" with backdated consulting agreements that described the computer database work they purportedly did, and COJO officials convinced at least one of the individuals to sign the agreement.

The evidence at trial also established that Naiman misapplied COJO funds. The government's proof focused on fraudulent "subcontractor" payments to a Brooklyn computer school known as SYRIT, which administered training programs. COJO bookkeeper Rachel Cooper testified that Naiman directed her to issue checks to SYRIT from the COJO Program Account. Among the SYRIT checks that the government produced at trial were: 1) a $2,000 check dated April 18, 1994; 2) a $1,000 check dated April 29, 1994; 3) a $2,500 check dated June 15, 1994; 4) a $2,500 check dated July 20, 1994; and 5) a $2,500 check dated October 24, 1994. Although these checks were cashed at Reliable, no one associated with SYRIT cashed them. Instead, Naiman caused several of the SYRIT checks to be cashed at Reliable through COJO messenger Jehuda Glucksman. As with the Chaim Brecher checks, Reliable employees explained that they wrote Elimelech Naiman's Hebrew initials on the reverse side of the check to signify that Naiman stood behind the check.

With respect to the bribery offense charged in Count 3, the government's proof focused on Naiman's use of COJO funds to pay for the tuition of Hikind's children at the Yeshiva of Flatbush. COJO bookkeeper Rachel Cooper testified that Naiman or Chernick directed her to write non-routine checks such as checks to the Yeshiva of Flatbush. Among the Yeshiva checks that the government produced at trial were: 1) a COJO General Account Check dated October 21, 1993, for $1,250; 2) a COJO General Account check dated October 28, 1993, for $1,000; 3) a COJO Program Account check dated January 31, 1994, for $5,000; and 4) a COJO Program Account check dated February 28, 1994, for $1,000. Cooper testified that either Naiman or Chernick instructed her how to record non-routine payments in the COJO ledger. The COJO ledger recorded the Yeshiva checks as "grants." With respect to the Program Account check dated January 31, 1994, Cooper stated that it was "[p]robably Rabbi Naiman" who directed her to issue the check, record it as a grant, and then turn over the check to him. Yeshiva bookkeper Lillian Bellows testified that three of the COJO "grant" checks were credited directly to Hikind's tuition account. The fourth was credited in part to Hikind's account and in part to the account of Sofie Vaen–Asher, whom Hikind had promised scholarship assistance.

At the close of the government's case-in-chief, Naiman and Hikind moved for judgment of acquittal pursuant to Fed. R.Crim.P. 29, claiming that there was insufficient proof to sustain a conviction on any count. Judge Sifton dismissed the conspiracy and mail fraud counts against Hikind as well as the tax fraud counts against both Naiman and Hikind. With respect to Count 2, the district court ruled that because there was insufficient evidence of embezzlement, the jury's deliberations would be limited to the question of whether defendants misapplied COJO funds in violation of 18 U.S.C. § 666(a)(1)(A). The district court denied defendants' Rule 29 motion in all other respects.

The jury convicted Naiman of misapplication in violation of 18 U.S.C. § 666(a)(1)(A) as charged in Count 2 based on five COJO checks made payable to SYRIT that the school never received and were instead cashed at Reliable in Brooklyn. The jury also convicted Naiman of bribery in violation of 18 U.S.C. § 666(a)(2) as charged in Count 3. The jury predicated its verdict in Count 3 on four COJO "grant" checks that the Yeshiva credited to the account of Assemblyman Hikind. However, the jury acquitted Hikind, the alleged recipient of the bribes. Finally, the jury convicted Naiman of six counts of mail fraud in connection with false certifications he made to New York State regarding work purportedly done under the Senate and Assembly member-item contracts. The jury acquitted Naiman on the conspiracy count and the remaining mail fraud counts, and acquitted Hikind on all counts.

On May 21, 1999, the district court denied Naiman's post-trial motion for acquittal, with the exception of a mail fraud charge at Count 19, which the government agreed to dismiss for insufficient proof. The final judgment against Naiman therefore was one count each of misapplication and bribery and five counts of mail fraud. On June 8, 1999, the district court sentenced Naiman to concurrent 24–month terms of imprisonment, and a $25,000 fine to be paid during his two-year period of supervised release. Naiman now appeals.

## DISCUSSION

### I. Sufficiency of the Evidence

■ Naiman argues that the evidence at trial was not sufficient to sustain any of his convictions, which involved Counts 2, 3, 12 through 15 and 18. We review de novo a challenge to sufficiency of the evidence. See United States v. Plitman, 194 F.3d 59, 66 (2d Cir.1999). "A defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a heavy burden." United States v. Walsh, 194 F.3d 37, 51 (2d Cir.1999) (citation and quotation omitted). We consider the evidence presented at trial "in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." United States v. Walker, 191 F.3d 326, 333 (2d Cir.1999) (citation and quotation omitted), cert. denied, —— U.S. ——, 120 S.Ct. 1702, 146 L.Ed.2d 506 (2000). "We will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Burns, 104 F.3d 529, 534 (2d Cir.1997) (citations and quotations omitted) (emphasis in original). "Nevertheless, a conviction cannot stand when the Government has not introduced sufficient evidence to sustain each essential element of the crime charged beyond a reasonable doubt." United States v. Morales, 185 F.3d 74, 80 (2d Cir.1999), cert. denied, —— U.S. ——, 120 S.Ct. 1282, —— L.Ed.2d —— (2000) (quoting United States v. Chacko, 169 F.3d 140, 148 (2d Cir.1999)). With this standard of review in mind, we examine each of Naiman's seven convictions.

### A. Section 666

Two of Naiman's convictions concern different subsections of Section 666(a). In 1984, Congress enacted 18 U.S.C. § 666 in order "to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program." See S.Rep. No. 225, 98th Cong., 2d Sess. 369 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3510. The law generally prohibits theft or bribery with respect to programs receiving federal funds. Specifically, Section 666 provides:

(a) Whoever, if the circumstance described in subsection (b) of this section exists——

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

(A) embezzles, steal, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

(i) is valued at $5000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or

.    .    .    .    .

(2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5000 or more;

shall be fined ... imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666. Section 666(b) contains the jurisdictional element of the statute. A defendant may be convicted of misapplication of funds or bribery only if the government proves that the organization or state of which the defendant is an agent receives more than $10,000 in federal funding in the relevant one-year period. *See* 18 U.S.C. § 666(b); *see also United States v. Foley*, 73 F.3d 484, 489 (2d Cir.1996), *overruled in part on other grounds, Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997).

1. **Misapplication**

The jury convicted Naiman of misapplying COJO funds in violation of 18 U.S.C. § 666(a)(1)(A) based on five checks that COJO issued to SYRIT. Appellant contends that the evidence at trial was insufficient to sustain this conviction, which the government charged in Count Two of the indictment. According to Naiman, there was no evidence that SYRIT failed to receive the money from the five COJO checks, and the government failed to prove that Naiman took possession of the check proceeds or applied them to personal use. Appellant maintains that reversal is required because the proof at trial was at best equally consistent with guilt or innocence. We disagree.

The government presented evidence sufficient to sustain Naiman's conviction for misapplication. COJO bookkeeper Rachel Cooper testified that she issued checks to SYRIT only at the direction of Naiman or Chernick. COJO's messenger, Jehuda Glucksman, testified that he regularly brought checks to Reliable to be cashed, and he remitted the funds to Naiman. Reliable owner Samuel Rottenstein testified that Reliable cashed third-party checks from COJO because Naiman stood behind the checks. Reliable employee Isaac Lichtenstein corroborated Rottenstein's testimony. Reliable employees also testified that they placed Elimelech Naiman's Hebrew initials on the back of SYRIT checks as a sign of Naiman's guaranty. The uncontroverted evidence at trial showed that Naiman cashed at least five SYRIT checks at Reliable. Rottenstein testified that he never cashed checks for any individuals associated with SYRIT. Viewing the physical evidence and testimony in the light most favorable to the government, the jury reasonably could infer that SYRIT never received the check proceeds. Moreover, it was reasonable for the jury to conclude that Naiman misapplied COJO funds by cashing five SYRIT checks totaling $10,500. There is no question that

COJO received more than $10,000 in federal funding, thus satisfying the jurisdictional element of the statute. We reject appellant's contention that the government was obligated to trace the cash obtained from the SYRIT checks or show how Naiman used the cash. The evidence at trial amply showed that Naiman's conduct rose above a mere violation of accounting or banking rules and did not constitute innocent maladministration. Naiman took elaborate and affirmative measures to access and use COJO funds intended to benefit SYRIT. Consequently, we affirm Naiman's misapplication conviction on Count Two.

### 2. Bribery

Naiman advances several challenges to the sufficiency of the evidence to sustain his conviction for corruptly making payments to Dov Hikind with the intent to influence or reward him regarding allocation of member-item funds. Appellant claims there was insufficient evidence linking him to the grants to the Yeshiva of Flatbush and no proof how the COJO grants came to be credited to Hikind's tuition account. Because we find a more fundamental flaw in the government's proof, we do not reach Naiman's more cumulative challenges to the evidence.

■ Naiman argues that the government failed to satisfy the jurisdictional element of Section 666. Because Count 3 charged that Naiman bribed Hikind, an agent of New York State, Section 666(b) required proof that the State of New York received $10,000 in federal funds in the year in which the bribe took place. As Naiman points out, the only testimony offered at trial to satisfy the jurisdictional element of Section 666(b) was that of William Collins, but the court explicitly limited Collins' testimony to the issue of codefendant Hikind's guilt. Before Collins testified, the defense asked the district court to instruct the jury that it should consider the witness's testimony regarding certain Assembly documents only against Hikind. The court confirmed with the government that it offered the documents only against Hikind, and the court agreed to deliver a limiting instruction. However, when Collins began his testimony, the district court did not deliver the limiting instruction. Defense counsel objected, alluding to the agreed upon instruction. Judge Sifton responded:

> Yes. I said I would give a limiting instruction. I neglected to do so. This gentleman's testimony is being offered solely in connection with your consideration of the charges against Mr. Hikind and is not to be considered [against] Rabbi Naiman.

The government maintains that the limiting instruction, read in context, pertains only to the documentary evidence Collins offered and not to Collins' testimony in its entirety. The record does not support this assertion.

■ The district court specifically instructed the jury that it could consider Collins' testimony only as to Hikind. On the record before us, the only permissible inference that we could draw is that the court admitted Collins' testimony solely against Dov Hikind. While we recognize that we must draw every inference in the government's favor when defendant challenges the sufficiency of the evidence, we may not read into the record an objection that the government never made or a clarification that it never sought. To do so would accord the government the benefit of the doubt and condone its oversight of the important fact that two defendants—not just one—were on trial. The government had ample opportunity to clarify, either in conference or at the time the court gave the instruction, that it was offering part of Collins' testimony against Naiman in order to satisfy the jurisdictional element of the statute. Without proof of the nexus between the alleged bribes and the integrity of federally funded programs, Naiman's conviction cannot stand. *See United States v. Santopietro,* 166 F.3d 88, 93 (2d Cir.1999). Naiman was under no

obligation to point out the government's error. In the criminal prosecution context, Naiman's silence was not analogous to waiver. Because the government failed to prove the jurisdictional element that Section 666(b) of the statute requires, we reverse Naiman's bribery conviction.

## B. Mail Fraud

■ Appellant also claims that the trial evidence was insufficient to sustain his convictions on five counts of mail fraud. "In order to convict a defendant of mail fraud in violation of 18 U.S.C. § 1341, the government must show that the defendant engaged in a scheme to defraud [the] victim of money or property, and that that scheme was furthered by use of the mails." *United States v. Laljie*, 184 F.3d 180, 188 (2d Cir.1999). To prove the "use of the mails" element, the government need show only that a mailing that defendant implemented was "incident to an essential part of the scheme." *Id.* (citation and quotation omitted).

■ Naiman argues that even if he falsely certified that certain individuals performed work under the Senate and Assembly contracts, his lie was not a material misrepresentation. Appellant contends that the precise identity of the employees who performed the contract was not important to the State as long as COJO satisfied the contract. We disagree. Contrary to Naiman's assertions regarding materiality, the uncontroverted testimony of Keith Barney established that the New York Department of State had limited resources to monitor compliance with member-item contracts and consequently relied heavily on the terms of the contracts and the representations that award recipients made certifying use of the funds for intended purposes. Furthermore, documentary evidence in the form of the New York Vouchering Procedure Guidelines demonstrates that the certification of a representative such as Naiman "is an integral part of [the] payment review" that allows the recipient organization to maintain its full documentation of expenditures at its local office. Without the certification, recipient organizations must submit copies of documents to the state for review.

■ Appellant also urges us to reverse his mail fraud convictions because he lacked fraudulent intent to harm the victim. The government was not required to produce evidence of intent independent of the scheme to defraud. Naiman's argument rests on the erroneous assumption that his scheme to defraud did not cause injury to the State. However, in order to prove intent, "the government must show 'that some actual harm or injury was *contemplated* by the schemer'" and need not prove actual injury. *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir.1994) (quoting *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970)).

■ The proof at trial amply demonstrated Naiman's intent to defraud. Defendant falsely certified to the State that CSRD paid more than $50,000 to Chaim Brecher and Saul Wassertheil for their work under the Assembly contract. Relying on Naiman's representations, the State reimbursed CSRD for the full amount it requested, even though neither Brecher nor Wassertheil performed any contract work. Similarly, Naiman's request for reimbursement to pay for nonexistent consulting services that Hikind employees and their relatives purportedly rendered caused economic injury to the State. Accordingly, we reject Naiman's challenges to the sufficiency of the evidence and affirm his convictions for mail fraud.

## II. Remaining Contentions

### A. Prejudicial spillover

■ Naiman argues that we should reverse his misapplication and mail fraud convictions because the evidence pertaining to the counts dismissed at trial and reversed on appeal prejudiced the jury's consideration of the remaining counts.

We look to the totality of the circumstances to assess prejudicial spillover of evidence from dismissed counts. *See Morales*, 185 F.3d at 82. Specifically we examine: 1) whether the evidence on the vacated counts was inflammatory and tended to incite or arouse the jury to convict the defendant on the remaining counts; 2) whether the evidence on the vacated counts was similar to or distinct from that required to prove the remaining counts; and 3) the strength of the government's case on the remaining counts. *See id.*

Applying these principles to appellant's claim, we see no prejudicial spillover of evidence from the dismissed embezzlement charge or the reversed bribery conviction. First, we conclude that the evidence of embezzlement and bribery was not so inflammatory as to incite the jury to convict Naiman of either misapplication or mail fraud. The specificity of the verdict that the jury rendered reveals a deliberate and measured decision. Nor does the record indicate that the jury accorded evidence of embezzlement or bribery disproportionate weight in the deliberative process. *See United States v. Wapnick*, 60 F.3d 948, 954 (2d Cir.1995). On the contrary, the jury appears to have sorted through the voluminous evidence and arrived at a rational decision, which included the acquittal of Hikind.

With respect to the second factor, we note that "where the vacated and remaining counts emanate from similar facts, and the evidence introduced would have been admissible as to both, it is difficult for a defendant to make a showing of prejudicial spillover." *Morales*, 185 F.3d at 82 (quoting *Wapnick*, 60 F.3d at 954). To the extent that the government produced evidence at trial of embezzlement, the evidence also was admissible to prove misapplication. Conversely, "where the vacated and remaining counts arise out of completely distinct fact patterns, and the evidence as to both counts is readily separable, there is also no prejudicial spillover." *Id.* Here, the embezzlement and mail fraud charges emanate from distinct fact patterns and we are not convinced that evidence of the former influenced the jury's verdict. The trial evidence of bribery does not support a claim of prejudicial spillover because much of the evidence, which related to COJO's finances, also was admissible for purposes of the misapplication charge. The jury had little difficulty sorting through the evidence and issuing a detailed verdict on Count 2 based on five SYRIT checks. There is no basis for us to conclude that the COJO grants to the Yeshiva of Flatbush improperly influenced the jury's verdict on Count 2.

We also reject Naiman's assertion that the mail fraud convictions resulted from prejudicial spillover of bribery evidence. The evidence of Naiman's scheme to defraud the State of New York in connection with member-item funds was factually distinct from the evidence that tended to prove corrupt payments to Hikind. The mail fraud convictions concerned Naiman's false certifications mailed to the State while the evidence of bribery concerned the COJO grants to the Yeshiva of Flatbush. Therefore, we find little basis for Naiman's contention that his acquittal on bribery charges necessitates reversal of the mail fraud convictions. Finally, our consideration of the overall strength of the government's proof that Naiman misapplied COJO funds and committed mail fraud leads us to reject Naiman's claim of prejudicial spillover and affirm the remaining convictions.

**B. Jury instructions**

Naiman argues that we should reverse his misapplication conviction because the district court "impermissibly elevated a violation of a prophylactic civil regulation into a crime" by instructing the jury that violation of a civil auditing restriction was sufficient to convict Naiman of misapplication. We review *de novo* the propriety of jury instructions. *See United States v. Abelis*, 146 F.3d 73, 82 (2d Cir.), *cert. denied*, 525 U.S. 1009, 119 S.Ct. 527, 142

L.Ed.2d 437 (1998). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Walsh*, 194 F.3d 37, 52 (2d Cir.1999) (citation and quotation omitted). Reversal is required only if the instructions, viewed as a whole, caused the defendant prejudice. *See id.*

■ We find no basis for reversal. The district court instructed the jury that "[a] person misapplies property when he knowingly and intentionally applies an organization's funds to a use that the person knows to be contrary to a restriction placed on the organization by a state or federal contract, grant or program pursuant to which the organization receives funds." The district court therefore specifically linked the "restrictions" with the government-funded program at issue. The court explained that the jury could consider as examples "restrictions placed on COJO allegedly as a condition of its receipt of member item monies, restrictions concerning the keeping of accurate accounts for purposes of audit, to name two." We reject Naiman's contention that this instruction allowed the jury to convict Naiman of misapplication based merely on a civil auditing violation. Read in the context of the entire charge, it was clear that the court provided a non-exhaustive list of examples of how the jury might find that the defendant misapplied funds the state provided to COJO. Naiman failed to show that the charge as a whole caused him prejudice, and we therefore decline to reverse the misapplication conviction on grounds of erroneous jury instructions. *See United States v. Dinome*, 86 F.3d 277, 282–83 (2d Cir.1996).

### C. Admissibility of immunity agreements

■ Naiman claims that the district court erred in allowing the government to introduce evidence on redirect examination that two witnesses had entered into immunity agreements with the government, be-

cause defendant had not challenged the witnesses' credibility during cross-examination. The government responds that the district court properly allowed it to introduce the immunity agreements to rebut the witnesses' testimony that they believed they had done nothing wrong. We agree.

■ Evidentiary rulings are reviewable only for abuse of discretion. *See United States v. Diaz*, 176 F.3d 52, 79 (2d Cir.), *cert. denied*, — U.S. ——, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999). Redirect examination "may be used to rebut false impressions arising from cross-examination and the trial judge is in the best position to determine whether such a false impression was created." *Id.* at 80 (internal quotation omitted). "The scope of redirect examination is a matter entrusted to a trial judge's broad discretion." *Id.* Here, Naiman opened the door for the government's redirect examination by eliciting testimony from COJO bookkeeper Rachel Cooper that she did not think she had done anything wrong when she accepted tax-free "grants" for yeshiva tuition from COJO in lieu of a raise. Similarly, Naiman's secretary, Esther Jacobs, testified on cross-examination that she did not think she did anything wrong by helping COJO provide state-subsidized health insurance to individuals whom COJO did not employ. We therefore find no abuse of discretion here. In fact, the district court specifically limited the scope of the government's inquiry and instructed the jury to consider the *fact* that Jacobs and Cooper had entered into immunity agreements as simply another "circumstance[ ] under which the witness has testified." In light of the limited purpose for which the immunity agreements were offered and admitted, we find in Naiman's arguments no basis for reversal.

### CONCLUSION

We reverse Naiman's conviction for bribery under 18 U.S.C. § 666(a)(2) be-

cause the government failed to prove the jurisdictional element of the crime. We have examined appellant's remaining contentions and find them to be without merit. The judgment of the district court is affirmed in part and reversed in part.