UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 01-30376

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

VERSUS

SEBASTIAN SALVATORE, also known as Buster, also known as Harry,

    Defendant - Appellant

---

Appeal from the United States District Court
For the Eastern District of Louisiana
No. 94-CR-158-18-N

---

April 2, 2002

Before ALDISERT[*], DAVIS, and PARKER, Circuit Judges.

PER CURIAM:[**]

The long and winding road upon which this case has traveled
continues to unfold in this appeal from the district court's

---

[*] Circuit Judge of the Third Circuit Court of Appeals, sitting
by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

partial denial of appellant's petition for a writ of *coram nobis*. Although two main issues are raised, our primary task is to consider whether the jury's decision to convict the appellant, Sebastian Salvatore ("Salvatore"), on twenty non-mail fraud counts was prejudiced by the jury's consideration of seven vacated mail fraud counts. Because we find that no prejudicial spillover occurred, we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

In 1994, a federal grand jury indicted Salvatore and sixteen codefendants for operating a criminal enterprise that subverted the licensing requirements of the Louisiana Video Poker Law. The case against Salvatore was tried to a jury. The jury found Salvatore guilty of 27 counts. They included one count of violating the Racketeer Influenced Corrupt Organizations Act (RICO), one count of conspiracy to violate RICO under 18 U.S.C. § 1962, seven counts of mail fraud under 18 U.S.C. § 1341, two counts of conducting an illegal gambling business ("IGB") under 18 U.S.C. § 1955, sixteen counts of wire fraud under 18 U.S.C. § 1343, and one count of interstate travel and communication in aid of racketeering ("ITAR") under 18 U.S.C. § 1952. Salvatore was sentenced to eighteen months of imprisonment, to be followed by three years of supervised release, and ordered to pay restitution.

After conviction, Salvatore appealed to our court and raised three arguments. First, he contended that the video poker license

he was accused of fraudulently obtaining was not property under 18 U.S.C. § 1341, and thus the mail fraud charges should be overturned. Second, he asserted that the evidence was insufficient to uphold his convictions. Third, he claimed that the district court erred in empaneling an anonymous jury. We rejected each of these contentions and therefore upheld all the convictions. *See United States v. Salvatore*, 110 F.3d 1131 (5th Cir. 1997). With respect to Salvatore's first argument, we specifically held as a matter of first impression that "video poker licenses constitute money or property as required by the mail fraud statute." *Id*. at 1143.

Three years later, the Supreme Court ruled on the video poker license as property issue in *Cleveland v. United States*, 531 U.S. 12 (2000). The *Cleveland* Court held that "§ 1341 requires the object of the fraud to be 'property' in the victim's hands and that a Louisiana video poker license in the State's hands is not 'property' under § 1341." *Id*. at 25-26. Thus, after *Cleveland*, it became clear that Salvatore's seven mail fraud convictions were improper despite our holding to the contrary.

By 2001, Salvatore had served his sentence, complied with the terms of his supervised release, and had paid his assessment fees. On January 5, 2001, he filed a petition for writ of error *coram nobis* in the district court asking the court to vacate all of his convictions. He argued that his mail fraud convictions must be

3

vacated based upon the *Cleveland* ruling. He also contended that the RICO convictions should be overturned because the two IGB counts, the remaining sub-predicate acts upon which the RICO convictions were based after the three sub-predicate acts of mail fraud were erased, were invalid. He asserted that the video poker business he was involved in was not "illegal" if the licenses were not obtained by fraud and there was no way to tell whether he had been convicted of the IGB counts directly or only vicariously. Finally, he asked the court to set aside his other convictions on the grounds that the defective mail fraud counts impermissibly tainted the entire trial.

The district court vacated the seven mail fraud counts based upon *Cleveland*, but denied relief on all other grounds. The court concluded that the RICO violations survived *Cleveland* because the special jury verdict form showed that, irrespective of the mail fraud convictions, Salvatore committed two predicate racketeering acts. The court also rejected the argument that the IGB convictions occurred vicariously as a result of the mail fraud convictions because the court specifically instructed the jury to consider the evidence for each count separately. The court further concluded that the mail fraud evidence did not impermissibly taint the other convictions.

Salvatore filed a timely notice of appeal from the district court's order. We have jurisdiction to hear the appeal pursuant to

4

28 U.S.C. §§ 1291 and 1294.

## II. STANDARD OF REVIEW

At the outset, we note that this type of writ is typically granted only to correct errors which result in a complete miscarriage of justice. *United States v. Morgan*, 346 U.S. 502, 506-512 (1954). To obtain *coram nobis* relief, Salvatore must demonstrate that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *United States v. Mandanici*, 205 F.3d 519, 524 (2nd Cir. 2000). On appeal, we review factual findings for clear error and questions of law de novo. The ultimate decision whether to deny or grant *coram nobis* relief, however, we review for abuse of discretion. *Id.; See also Alikhana v. United States,* 200 F.3d 732, 734 (11th Cir. 2000) (citations omitted).

## III. ANALYSIS

## A. RICO and RICO Conspiracy

Salvatore argues that once the mail fraud convictions are withdrawn, the RICO and RICO conspiracy counts all collapse. We disagree.

To convict Salvatore of the RICO violation, the government had to prove that Salvatore unlawfully conducted and participated in the affairs of an enterprise through a pattern of racketeering

5

activity. A pattern of activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amounted to or pose a threat of continued criminal activity. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). Therefore, the RICO and RICO conspiracy counts cannot be overturned if Salvatore committed at least two valid predicate acts of racketeering.

At trial, the district judge utilized a special verdict form which allowed the jury to determine which predicate acts were proven and which were not proven. Racketeering Act #1 consisted of the sub-predicate acts of mail fraud and conducting an IGB. Racketeering Act #2 consisted of two sub-predicate acts of mail fraud and one act of conducting an IGB. The jury specifically found that Appellant committed all five sub-predicate acts.

After *Cleveland*, the three mail fraud predicate acts can no longer support the RICO counts. However, the special jury verdict conclusively demonstrates that the jury found Salvatore guilty of the two remaining sub-predicate acts involving the IGB counts. Therefore, we will not overturn the RICO and RICO conspiracy convictions.[1] *See United States v. Peacock*, 654 F.2d 339, 348 (5th

---

[1] We also reject Salvatore's claim that the two predicate acts are invalid because the government did not meet the requirements for proving violations of 18 U.S.C. § 1955. To make out a violation of § 1955, the government had to prove that Salvatore conducted an illegal gambling business. 18 U.S.C. § 1955(b)(1) states that an "illegal gambling business" means a gambling business which -(i) is a violation of the law of a State or

6

Cir. 1981) (upholding RICO convictions because a special verdict form demonstrated that the jury found the defendants guilty of at least two predicate acts other than the reversed mail fraud charges).

**B.    Prejudicial Spillover**

Salvatore contends that there was prejudicial spillover from the mail fraud counts which tainted the convictions on the other counts.    In essence, he argues that the presence of the seven mail fraud counts, and the convictions on those counts, prejudiced the jury against him, and mandates the reversal of the other 20 counts.

In evaluating Salvatore's claim of prejudicial spillover of evidence from the vacated mail fraud counts, we look at the

---

political subdivision in which it is conducted; (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has gross revenue of $2,000 in any single day.  Here, the state law at issue, the Louisiana Video Poker Devices Control Law, requires that all prospective licensees and those who are given a license must satisfy "suitability" criteria.    La. Rev. Stat. 27:310.    The government claims that Salvatore and his co-conspirators violated the Louisiana suitability law when (1) they had Christopher Tanfield and Steve Bolson act as "front men" to obtain the licenses for their corrupt organization, and (2) when they ignored the continuing duty to inform the Louisiana Gambling Division of the true character and associations the licensees had. Based upon the evidence presented at trial, we conclude that the jury could properly find that Salvatore conducted a gambling business which violated the Louisiana Video Poker Law and thus could also properly find that Salvatore violated the federal IGB statute.  Consequently, the two IGB counts serve as valid predicate acts for the RICO counts.  The jury's findings as to these two predicate acts are sufficient to support the RICO convictions and will not be disturbed.

totality of the circumstances. To guide us in this inquiry, we apply a three-part test: (1) whether the evidence on the vacated counts was inflammatory and tended to incite or arouse the jury to convict the defendant on the remaining counts; (2) whether the evidence on the vacated counts was similar to or distinct from that required to prove the remaining counts; and (3) the strength of the government's case on the remaining counts. *See United States v. Naiman*, 211 F.3d 40, 50 (2nd Cir. 2000).

Applying this test, we find that no prejudicial spillover occurred. First, the evidence concerning the mail fraud counts involved technical information about the video poker license application process. The evidence presented involved Salvatore's role in setting up a "front man" to get the license to lease the video poker machines. Although this evidence tended to show Salvatore in a pejorative light, it is not the type that is so inflammatory that it would incite the jury to convict Salvatore on the other counts. Moreover, the specificity of the jury verdict form and the district judge's instructions to the jury to separately consider each count, and the evidence pertaining to it, militates against a determination that the jury was incited to convict on the remaining twenty counts.

Second, courts have stated that "where the vacated and remaining counts emanate from similar facts, and the evidence introduced would have been admissible to both, it is difficult for

8

the defendant to make a showing of prejudice." *Naiman*, 211 F.3d at 50; *United States v. Morales*, 185 F.3d 74, 82 (2nd Cir. 1999). We agree with this statement. Here, the evidence relating to Salvatore's mail fraud convictions was related to his other convictions and would have been properly admissible even without the mail fraud counts. Thus, the second factor also weighs against Salvatore.

Finally, we note that the government's case against Salvatore on the remaining counts is strong enough to prevent us from finding prejudicial spillover. FBI Agent Richard McHenry testified about the numerous conversations that took place between members of the conspiracy which included Salvatore. Moreover, Christopher Tanfield's testimony inculpated Salvatore as participating in the efforts to both hide the mob connections of LRO and Worldwide Gaming and defraud Bally Gaming of hundreds of thousands of dollars in advances and loan payments.

## IV. CONCLUSION

The two IGB counts were valid predicate acts which support the RICO and RICO conspiracy counts. The use of the special verdict form, the similarities between the evidence on the vacated counts and remaining counts, the technical nature of the evidence presented concerning mail fraud, and the strength of the government's case lead us to conclude that the twenty non-mail fraud counts should not be overturned on the basis of prejudicial

9

spillover.  Consequently, we affirm the district court's decision in all respects.

AFFIRMED.