UNITED STATES of America,
Appellee,

v.

Demetrius HILL, also known as Demetrius Capone, also known as Meechie Hill, Defendant–Appellant.

No. 06–2958–cr.

United States Court of Appeals,
Second Circuit.

May 27, 2008.

Robin C. Smith, Brooklyn, NY, for Appellant.

Richard P. Donoghue, Assistant United States Attorney, (Emily Berger, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellees.

Present: Hon. SONIA SOTOMAYOR, Hon. RICHARD C. WESLEY, and Hon. J. CLIFFORD WALLACE,* Circuit Judges.

## SUMMARY ORDER

Defendant–Appellant Demetrius Hill appeals from a judgment entered on June 14, 2006 in the United States District Court for the Eastern District of New York (Hurley, *J.*). Hill was convicted, after a jury trial, of one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), one count of conspiring to commit robberies of narcotics traffickers, in violation of 18 U.S.C. § 1951(a), and one count of robbery of narcotics traffickers, in violation of 18 U.S.C. § 1951(a). We assume the parties' familiarity as to the facts, the procedural context, and the specification of appellate issues.

Hill's counsel raises four claims on appeal: (1) the search in which a .38 caliber revolver was recovered from Hill was conducted in a manner that violated the Fourth Amendment; (2) the prosecution violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), during jury selection; (3) there was insufficient evidence that Hill was guilty of Hobbs Act robbery in connection with the incident on Albamore Street; and (4) the trial court's jury instruction on the interstate commerce element of Hobbs Act robbery was unconstitutional. We find each of these claims to be without merit.

■ First, the trial court properly held that the search of Hill during which the .38 caliber revolver was discovered did not violate the Fourth Amendment. Hill argues that the officer's "decision to patdown [Hill] only after handcuffing him, removing him from the car and bringing him to a fence was unreasonable." It was not. "[T]here is no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (internal quotation marks omitted). The officer was "acting in a swiftly developing situation" in which he had reason to believe that both Hill and another passenger in his car were armed. *United States v. Casado*, 303 F.3d 440, 447 (2d Cir.2002) (quoting *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)). Under the circumstances, the officer's actions were reasonable: he was acting to protect his own safety, that of the driver of the car (who he had reason to believe was an innocent bystander), and that of the general public.

Second, the trial court properly found that the government did not violate *Batson* during jury selection. Hill contends that the prosecution violated *Batson* by striking 50% of the eligible black jurors and 33% of the eligible Hispanic jurors. Because the trial court, although it was not required to, found that the prosecution provided nonpretextual race-neutral reasons for the strikes we need not decide whether these statistics amount to a *prima facie* showing of discriminatory intent. *See Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."). Instead, we hold that the trial court properly

* The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit, sitting by designation.

found the proffered reasons to be credible and facially race-neutral—which Hill concedes with regard to at least one of the struck jurors—and no *Batson* violation occured.

■ Third, the Albamore Street robbery conviction was supported by sufficient evidence. Hill asserts that "the only reasonable view of the evidence ... is that while [Hill] ... may have intended to rob drug dealers when [he] approached Albamore Street, [he] changed [his] plan and decided to rob three individual drug buyers." This revisionist view of the evidence is meritless. The record reflects that, in describing his activities to law enforcement officers, Hill explicitly stated, "[w]e only robbed drug dealers" and "[a]ll I'm doing is robbing drug dealers." In additional to other testimony confirming the intent behind the charged conspiracy was to steal from drug dealers, we find Hill's claim disingenuous at best. Hill's additional assertions that the robbery did not have a sufficient impact on interstate commerce to warrant a Hobbs Act conviction and that the prosecution failed to prove that the stolen substances were illegal narcotics are equally meritless. This Court has held that illegal drug trafficking constitutes commerce for purposes of the Hobbs Act. *See United States v. Vasquez,* 267 F.3d 79, 90–91 (2d Cir.2001). In light of the testimony that Hill stole cash and an unspecified quantity of drugs reasonably believed to be cocaine and marijuana from the individuals on Albamore Street, the jury had ample basis to support Hill's conviction.

■ Fourth, the trial court's jury instructions properly advised the jury that it must find an actual or potential affect on interstate commerce to convict on the Hobbs Act conspiracy and robbery charges. While Hill is correct that a jury must decide whether the government has proven each element of a charged offense, see *United States v. Gaudin,* 515 U.S. 506, 522–23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), his attempts to equate the trial court's instructions here with the one the district court considered but rejected in *United States v. Parkes,* 497 F.3d 220, 230 (2d Cir.2007), is unavailing. This court "view[s] a disputed charge within the context of the district court's charges in their entirety." *United States v. Feliciano,* 223 F.3d 102, 120 (2d Cir.2000). Additionally, "[r]eversal [of a conviction] is required only if the instructions, viewed as a whole, caused the defendant prejudice." *United States v. Naiman,* 211 F.3d 40, 51 (2d Cir.2000). In this case, even if the single sentence of the jury instructions that is identified by Hill might be misleading if read on its own, in the context of all of the trial court's instructions, it did not prejudice Hill, nor was the error, if any, obvious or egregious enough to constitute plain error. *See United States v. Gore,* 154 F.3d 34, 43 (2d Cir.1998).

In a supplemental brief filed *pro se,* Hill raises six additional claims: (1) the New York State statute providing for the general restoration of defendants' civil rights precluded his prosecution under 18 U.S.C. § 922(g)(1); (2) the officers lacked reasonable suspicion to conduct the stop and search during which they recovered Hill's firearm; (3) the government withheld exculpatory information in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (4) the superseding indictment gave insufficient notice that he faced liability under an aiding and abetting theory; (5) the trial court's preclusion of Bernard Freeman's testimony relating to crimes committed by Hill's co-conspirator months before the charged crimes constituted reversible error; and (6) Hill's former appointed counsel provided ineffective assistance during the pretrial motions litigation when he failed to respond in writing

to the government's motion for reconsideration of the district court's decision suppressing the firearm.

■ First, the New York State statute providing for the general restoration of defendants' civil rights did not preclude Hill's prosecution under 18 U.S.C. § 922(g)(1). Section 922(g)(1)'s prohibition on firearm possession applies to, among others, individuals who have been convicted of a "crime punishable by imprisonment for a term exceeding one year." However, section 921(a)(20) excludes from that definition convictions "for which a person ... has had civil rights restored ... unless such ... restoration of civil rights expressly provides that the person may not ... possess, or receive firearms." Hill contends that he falls within section 921(a)(20)'s exclusion because his civil rights were automatically restored under section 79 of the New York State Civil Rights Law once he completed his sentence of incarceration. A defendant's "civil rights" are not "restored" for the purposes of section 921(a)(20) unless the defendant has the right to vote, to hold public office, and to serve on a jury. *McGrath v. United States*, 60 F.3d 1005, 1007 (2d Cir.1995). Section 510 of the New York State Judiciary Law clearly states that a convicted felon may not sit as a juror. N.Y. Jud. Law § 510(3). Therefore, Hill is precluded from sitting on a jury and his civil rights have not been restored for section 921(a)(20) purposes.

■ Second, the officers had reasonable suspicion to stop and search Hill.[1] *Terry* and its progeny clearly recognize that the Fourth Amendment permits officers to initiate an investigatory stop on the basis of reasonable suspicion that the subject of the detention may be engaged in criminal conduct. *See, e.g., Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Here, the officers' suspicion was based on a detailed tip from a known and previously reliable informant. Courts have long held that informant reports may have sufficient indicia of reliability to provide the reasonable suspicion necessary to initiate an investigatory stop—this one did. *See, e.g., Alabama v. White*, 496 U.S. 325, 331, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Hill's claim that the detectives committed perjury in connection with their testimony regarding the circumstances of the stop and search is entirely frivolous.

■ Third, the trial court properly denied Hill's motion contending that the government withheld exculpatory evidence in violation of *Brady*. Hill contends that he is entitled to a new trial because the government redacted the names of two victims from a police report relating to a robbery that Hill was not charged with committing. However, the redacted names did not constitute *Brady* material in this case. Hill admits that he was not charged with the robbery in question, and that the robbery was never mentioned during his trial. As a result, the fact that two unnamed witnesses could not identify him as the perpetrator of an uncharged robbery is not exculpatory evidence in connection with this case.

■ Fourth, the superseding indictment sufficiently alleged that Hill was liable under an aiding and abetting theory. Hill contends that the phrase "together with others" and the citations to 18 U.S.C. § 2 were insufficient to allege and to provide notice that he faced liability under an aiding and abetting theory. Hill's contention

---

1. In his counsel's brief, Hill argued that the manner in which the stop and search were conducted violated the Fourth Amendment, but did not contend that the officers lacked reasonable suspicion to stop and search.

only relates to his conviction for the Hobbs Act robbery count, because neither of his other two convictions even arguably rested on an aiding and abetting theory. Even assuming *arguendo* that the Hobbs Act robbery conviction rested solely on aiding and abetting liability, the phrase "together with others" and the citations to 18 U.S.C. § 2 were sufficient to put Hill on notice that he faced such liability. Moreover, a defendant can be convicted on an aiding and abetting theory even when the indictment does *not* indicate that he is charged under 18 U.S.C. § 2 as long as the government makes its intention to prosecute on the theory known. *United States v. Damsky,* 740 F.2d 134, 140 (2d Cir.1984).

■ Fifth, the trial court properly precluded Freeman's irrelevant testimony. A district court "has broad discretion regarding the admissibility of evidence and its rulings will be disturbed only for an abuse of that discretion." *United States v. Wong,* 40 F.3d 1347, 1378 (2d Cir.1994). Hill intended to call Freeman to testify that, months before the charged robbery conspiracy, Freeman was robbed by defendant's co-conspirator and one or more accomplices, none of whom were Hill. As the testimony related to events entirely outside the scope of the charged conspiracy, and as there was no evidence or argument that Hill was involved in robberies with his co-conspirator prior to the time frame charged in the indictment's conspiracy count, the trial court properly excluded the evidence as irrelevant. It is worth noting that Hill's counsel agreed with the court's ruling.

■ Sixth, Hill's counsel's failure to submit a written statement in opposition to the government's request for reconsideration was not ineffective assistance of counsel. Although this Court has expressed a "baseline aversion to resolving ineffectiveness claims on direct review," *United*

*States v. Williams,* 205 F.3d 23, 35 (2d Cir.2000) (internal quotation marks omitted), it has deemed it appropriate where the defendant cannot show prejudice and therefore cannot prevail under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and an explanation from the attorney regarding his conduct is unnecessary as a matter of law, *see, e.g., United States v. Ben Zvi,* 242 F.3d 89, 96 (2d Cir.2001). Here, we have already deemed the trial court's resolution of the government's claim for reconsideration—namely, its reversal of its earlier decision to suppress Hill's fire arm—correct, and therefore Hill cannot show prejudice from his attorney's action.

Accordingly, for the reasons set forth above, the judgment of the district court is AFFIRMED.