*United States v. Elmowsky*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of May, two thousand twenty-three.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> *Circuit Judges.*

———————————————————————

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                                             No. 22-562

PAUL ELMOWSKY,

*Defendant-Appellant.*

———————————————————————

**For Defendant-Appellant:**     MICHAEL K. BURKE, Hodges Walsh & Burke, LLP, White Plains, NY.

**For Appellee:**     JEFFREY C. COFFMAN (James F. McMahon, David Abramowicz, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Nelson S. Román, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Paul Elmowsky appeals from his judgment of conviction following a jury trial in which he was found guilty of possessing an unregistered short-barreled rifle (the "Uzi"), in violation of 26 U.S.C. §§ 5845(a)(4) and 5861(d). The district court thereafter sentenced Elmowsky to a term of three months' imprisonment, to be followed by two years' supervised release, the first nine months of which would be served on home detention. On appeal, Elmowsky raises four challenges to his conviction, which we address in turn. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

*First*, Elmowsky contends that his prosecution was time-barred, asserting that the three-year limitations period prescribed by 26 U.S.C. § 6531 began to run when the Uzi was transferred to him in September 1991, thus expiring decades before he was indicted on November 9, 2020. We disagree. We review a district court's application of a statute of limitations de novo. *See United States v. Sampson*, 898 F.3d 270, 276 (2d Cir. 2018). Limitations periods "normally begin to run when a crime is complete," and for offenses that "involve[] a prolonged course of conduct," this means when the "conduct has run its course." *United States v. Eppolito*, 543 F.3d 25, 46 (2d Cir. 2008) (internal quotation marks omitted). Because section 5861 makes it unlawful "to receive *or possess* a firearm which is not registered," 26 U.S.C. § 5861(d) (emphasis added), it is a continuing offense that "ceases only when the possession stops," *United States v. Estevez*, 961 F.3d 519, 528 (2d Cir. 2020) (internal quotation marks omitted). Thus, the three-year limitations period did not commence when Elmowsky received the Uzi in September 1991, but rather when Elmowsky's possession of it ended on December 31, 2018. As a result, Elmowsky's 2020 indictment was clearly timely.[1]

---

[1] Although Elmowsky relies extensively on the Tenth Circuit's vintage decision in *Waters v. United States*, 328 F.2d 739, 740–44 (10th Cir. 1964), that case is not to the contrary, as there the information was filed more than three years after the date of the alleged illegal possession.

*Second*, Elmowsky argues that a new trial is warranted because the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by failing to timely disclose a certain Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") form, known as ATF Form 4473, which documents firearm transfers. Elmowsky does not dispute that the government produced before trial an ATF Form 4473 documenting the 1991 transfer of the Uzi from a federally licensed firearms dealer to Elmowsky (the "Uzi 4473"). He nonetheless asserts that the government suppressed until trial an ATF Form 4473 documenting the transfer of a *different* gun from the same dealer to a *different* customer (the "Glock 4473"), a transfer that just happened to bear the same transaction number as the Uzi 4473. Having "conduct[ed] an independent examination of the record," *United States v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997), we conclude that the government's late disclosure of the Glock 4473 did not constitute a *Brady* or *Giglio* violation.

To establish such a violation, "a defendant must show that: (1) the [g]overnment, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir.

4

2001). Even assuming that the government suppressed the Glock 4473 for some period of time, Elmowsky cannot explain how the document was favorable to him – either as exculpatory evidence or as a basis for impeaching the ATF witness. Nor has Elmowsky explained how the trial's outcome would have been any different had the document been disclosed prior to, rather than during, trial. *See id.* at 141–42 ("[W]e have never interpreted due process of law as requiring more than that *Brady* material must be disclosed in time for its effective use at trial."); *see also Strickler v. Greene*, 527 U.S. 263, 281 (1999) (noting that nondisclosure will result in a new trial only if the evidence was material, meaning there is "a reasonable probability that the suppressed evidence would have produced a different verdict").

*Third*, Elmowsky asserts that there was insufficient evidence to prove the knowledge element of the charged offense. Again, we disagree. A defendant challenging the sufficiency of the evidence faces an "exceedingly deferential standard of review." *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008). A reviewing court must view the evidence "in its totality," *United States v. Cassese*, 428 F.3d 92, 98–99 (2d Cir. 2005), drawing "[a]ll permissible inferences . . . in the government's favor," *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999), to

5

"determine whether . . . a reasonable mind might fairly conclude guilt beyond a reasonable doubt," *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (internal quotation marks omitted). Applying that standard here, we are confident that ample evidence supported the jury's finding that Elmowsky satisfied section 5861(d)'s knowledge requirement.

To be convicted under section 5861(d), Elmowsky must have "kn[own] of the characteristics of his weapon that made it a 'firearm'" as statutorily defined. *Staples v. United States*, 511 U.S. 600, 604 (1994); *see also* 26 U.S.C. § 5845(a)(4) (defining a "firearm" to include "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length"); *id.* § 5845(c) (defining rifle). The government presented more than sufficient evidence on this score, including testimony and exhibits demonstrating that (1) the Uzi's total length was approximately twenty-four inches and its barrel was approximately eight inches, *see* App'x at 137, 377; (2) the Uzi was engraved with the word "carbine," which refers to a type of rifle, and was cut down from a factory barrel length of more than sixteen inches, *id.* at 130, 394–400; (3) Elmowsky owned the Uzi for almost three decades, *id.* at 318, 640; and (4) Elmowsky was admittedly very familiar with federal firearm statutes, *id.*

at 317. Considering the evidence in its totality and drawing all reasonable inferences in the government's favor, we have no basis to disturb the jury's verdict for insufficiency of evidence.

*Fourth*, and finally, Elmowsky contends that the district court erred when it refused to instruct the jury that he could not be convicted if he believed in good faith that the Uzi was not a firearm as defined by 26 U.S.C. § 5845(a)(4). We review a challenge to the district court's jury instructions de novo. *See United States v. Naiman*, 211 F.3d 40, 50–51 (2d Cir. 2000). When a defendant claims that the district court misled the jury by omitting an instruction that he requested, the defendant must demonstrate that (1) he requested a charge that "accurately represented the law in every respect," and (2) the charge delivered instead was both (i) "erroneous" and (ii) "prejudicial." *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015) (internal quotation marks omitted). Simply put, Elmowsky's requested charge did not accurately reflect the law, since even a good-faith belief that the Uzi did not need to be registered is not a defense to the general-intent crime embodied in section 5861(d). *See Staples*, 511 U.S. at 604, 609, 619 (requiring only knowledge of the characteristics of one's weapon that make it a firearm as defined by section 5845(a)(4)); *id.* at 622 n.3 (Ginsburg, J., concurring) ("The mens

7

rea presumption requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption . . . that, ordinarily, ignorance of the law or a mistake of law is no defense to criminal prosecution" (internal quotation marks omitted)); *United States v. Champegnie*, 925 F.2d 54, 55 (2d Cir. 1991) (holding that "good faith or mistaken belief" was not a defense to a general-intent crime where "[t]he statute contain[ed] no language requiring proof of a particular mental state"); *see also* App'x at 612–13 (district court so instructing the jury).

We have considered Elmowsky's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
